## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL VAUGHN, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. 3:06-cv-310 |
| | § | |
| UNUM LIFE INSURANCE COMPANY | § | |
| OF AMERICA, | § | |
| | § | |
| **Defendant.** | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court are Defendant, Unum Life Insurance Company of America's ("Unum") Motion for Summary Judgment (dkt. #21) and Plaintiff, Michael Vaughn's Cross Motion for Summary Judgment (dkt. #25). After considering the motions, responses, and applicable law, the court is of the opinion that Unum's motion for summary judgment should be GRANTED and Plaintiff's motion for summary judgment should be DENIED.

### Factual and Procedural History

Plaintiff filed suit to recover long-term disability benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*. Plaintiff was insured under a group long-term disability insurance policy issued by Unum to his employer, Parsons E&C Corporation. Under the policy, Unum acted as the claims administrator and had "discretionary authority to determine [ ] eligibility for benefits and to interpret the terms and provisions of the policy."[1]

Plaintiff filed a claim for disability benefits with Unum under the policy on November 10, 2003 asserting that he had become disabled from his occupation as a Senior Safety Specialist. The

---

[1] D.'s M.S.J. (dkt. #21), Ex. A(1), POL 010.

claim forms indicated Plaintiff's date of disability and last day of work were on August 6, 2003.[2]

The Attending Physician's Statement submitted with his claim and completed by James Incalcaterra,

M.D. cited his disability as "acute and chronic anxiety."[3]  After receiving the claim forms, a Unum

representative contacted Plaintiff about his condition.  According to the notes taken during the

conversation, Plaintiff stated that he was unable to pinpoint his problem but he did have

fibromyalgia,[4] neuropathy,[5] and he suffered a heart attack in 2002.  He also commented that Dr.

Incalcaterra advised him to see a psychiatrist, but he felt that it was not necessary.[6]

Pursuant to Dr. Incalcaterra's referral, Plaintiff first visited Dr. Patricia Corke, a psychiatrist,

on December 9, 2003.  He presented with the following symptoms: can't make decisions, can't

focus, fatigued, not sleeping well, and bouts of feelings that he should have died [from his heart

attack].[7]  After her evaluation she diagnosed Plaintiff with Major Depressive Disorder,[8] but noted

---

[2]  The Employer Statement submitted with Plaintiff's proof of claim denoted Plaintiff's last date of work as August 8, 2003. *Id.* at Ex. A(2), UA 17.  This discrepancy is irrelevant for purposes of this court's analysis.  Hereinafter the court will refer to Defendant's Ex. A(2), which are excerpts from the administrative records, simply as UA with the page number.

[3]  UA 16.

[4]  Fibromyalgia is a common condition characterized by long-term, body-wide pain and tender points in joints, muscles, tendons, and other soft tissues. Fibromyalgia has also been linked to fatigue, morning stiffness, sleep problems, headaches, numbness in hands and feet, depression, and anxiety. *See* A.D.A.M MEDICAL ENCYCLOPEDIA, available at http://www.nlm.nih.gov/medlineplus/encyclopedia.html.

[5]  Peripheral neuropathy is a problem with the nerves that carry information to and from the brain and spinal cord. This produces pain, loss of sensation, and inability to control muscles. Plaintiff's case indicates his nerve damage stemmed from his diabetes. *Id.*

[6]  UA 22 (Doctors visit on November 13, 2003).

[7]  UA 68.

[8]  UA 69.  Major depression is when five or more symptoms of depression are present for at least 2 weeks. These symptoms include feeling sad, hopeless, worthless, or pessimistic. In

2

he was "not symptomatic enough from point of view of depression to be completely disabled."[9]  She also noted that Plaintiff owned his own business and worked 40 hours per week.[10]  At a subsequent visit, Dr. Corke's notes dated February 2, 2004 indicated that Plaintiff believed his main disability was fibromyalgia; thus, Dr. Corke referred Plaintiff to Dr. Patricia Salvato for treatment of fibromyalgia.

In a conversation with a Unum representative in February 2004, Plaintiff explained that beginning in August 2003 he experienced increased pain due to possible fibromyalgia.  Although that diagnosis had not been confirmed, the problem was persistent and very painful.  He stated he was unable to function and the increased pain caused him to feel depressed.  Plaintiff also commented that he saw Dr. Corke on a weekly basis and Dr. Incalcaterra monthly.  Plaintiff stated that the main condition preventing him from working was the pain and that the severity of it made him unable to concentrate and function because he felt weak and tired.[11]

On February 23, 2004, Unum consulted Donna Estudillo, R.N. to examine Plaintiff's records.  After reviewing Dr. Corke's and Dr. Incalcaterra's records, she concluded: "Given no remarkable [physical exam] findings documented and psychiatrist notes claimant owns his own business and from psych standpoint is not completely disabled and essentially has full time employment, impairment does not appear to be supported."  She also recommended a referral to another on-site

---

addition, people with major depression often have behavior changes, such as new eating and sleeping patterns. Major depression increases a person's risk of suicide.  *See* A.D.A.M MEDICAL ENCYCLOPEDIA, *supra*.

[9]  UA 70.

[10]  *Id.*

[11]  UA 75 (conversation on February 20, 2004).

physician to determine if the medical evidence supported impairment due to fibromyalgia, neuropathy and depression.[12]

On the same date, Mercy Marara, a therapist in Dr. Corke's office conducted a Functional Capacities Evaluation ("FCE") and a Mental Status Supplemental Questionnaire ("MSSQ") based on her evaluation of Plaintiff's psychiatric status.  According to the FCE, Plaintiff's ability to work was mildly impaired (i.e. suspected impairment of slight importance which does not affect functional ability).  She noted under the criteria 'ability to work relative to the attached job description' that "safety supervision on site may be too stressful."[13]  According to the MSSQ Plaintiff's described reasons for seeking treatment were depression and anxiety regarding health problems and fear of having another heart attack and not being able to perform his job. His current condition was described as constant pain from fibromyalgia and neuropathy, anxiety, and depression.  He was diagnosed with Major Depressive Disorder secondary to his physiological medical problems.[14]

On March 10, 2004, Debra Kile, M.D., a doctor in Unum's internal medicine department, reviewed Plaintiff's file.  She was unable to confirm the diagnoses of fibromyalgia or neuropathy because no tender point, rheumological, or neurological exams had been performed on Plaintiff.[15] During the process of completing her review, Dr. Kile spoke with Dr. Incalcaterra and Dr. Corke. Dr. Incalcaterra stated he still believed Plaintiff's primary problem was stress and anxiety and that the problem was psychological and not physical.  He believed Plaintiff's physical problems were

---

[12]  UA 79 (review from February 23, 2004).

[13]  UA 85.

[14]  UA 86.

[15]  UA 90.

4

caused by his psychological state, although he was not aware of Plaintiff's current status because he had not seen him since December 2003.  He cited Plaintiff's multiple visits to the emergency room because of chest pain, but believed Plaintiff could return to work once his psychological problems were under control.  Dr. Incalcaterra did not recall Plaintiff having significant peripheral neuropathy.  From a physical standpoint, he opined that Plaintiff's condition did not preclude full-time light work capacity.[16]  Dr. Kile also spoke to Dr. Corke, who stated generally she found that for anxiety and depression–non-psychotic disorders–patients usually have the ability to work and benefit from work with concurrent treatment.  She believed Plaintiff's depression and psychological disturbances did not prevent him from working.[17]

Based on her conversations with both of Plaintiff's primary treating physicians and her review of  his medical records, Dr. Kile concluded that it was reasonable to support a period off work for 4-6 weeks for further evaluation and treatment; however, beyond this time, condition severity and physical and mental impairment was not adequately supported.  She determined that the condition did not appear to preclude return to full-time light occupation with treatment running concurrent with work.[18]

On March 1, 2004, Plaintiff saw Dr. Salvato regarding his pain and fatigue, approximately seven months after his claimed date of disability.  Dr. Salvato found Plaintiff had 12/18 tender points consistent with fibromyalgia and decreased light touch in his feet.[19]  However, the records did not

---

[16]  *Id.*

[17]  *Id.*

[18]  UA 91.

[19]  UA 114.

indicate the severity of the condition or the affect it would have on Plaintiff's ability to work.  Dr. Kile reconsidered her opinion in light of Dr. Salvato's records.  After reviewing these records, she concluded this new information did not appreciably alter her opinion. She found the subjective complaints, without sustained observation, visit frequency, level of care, exam findings or diagnostic studies to support condition severity, indicated that Plaintiff's condition did not preclude him from sedentary to light work activity.[20]

On March 25, 2004, Unum denied Plaintiff's claims for benefits.  After citing the relevant policy terms and the medical records reviewed by Unum, it concluded:

> [The medical reviewers] found that significant impairment is not supported. Basically, there are subjective complaints not supported by objective findings (frequency of visits, level of care, examination findings or diagnostic studies).  They also found your business activities at home; along with the noted inconsistencies do not support your inability to perform the material and substantial duties of Senior Safety Specialist. Since the medical information in your file does not support disability beyond the 60 day elimination period, we cannot approve your claim for benefits.[21]

Plaintiff timely appealed Unum's decision and submitted additional medical records, along with a job description for his position as a Senior Safety Specialist.  Specifically, Plaintiff submitted records from Dr. Jorge Garcia-Gregory, his cardiologist.  Dr. Garcia-Gregory ordered a stress test on August 8, 2003 to gauge Plaintiff's heart functioning.  Notably, this stress test was performed on or about the day Plaintiff stopped working. Although the exercise ended because of fatigue, the results were considered normal and no cardiac symptoms were detected during the treadmill test.[22] On August 11, 2004, Plaintiff again participated in a treadmill stress test performed by Dr. Garcia-

---

[20]  UA 126.

[21]  UA 137.

[22]  UA 244.

6

Gregory.  He was able to attain the target heart rate with no cardiac symptoms reported during stress or recovery.  He performed the test within normal range and there was no change from the prior test in 2003.[23]  On November 16, 2004, a Unum representative spoke with Dr. Garcia-Gregory's office regarding Plaintiff's heart condition.  A staff member stated that Plaintiff does have coronary artery disease, which is treated with medication, but that the claimant should not be limited by his cardiac condition.[24]

In accordance with the claims review procedures, Unum requested an independent medical review of all the records on file, including the additional records submitted by Plaintiff. Gary McCollum, R.N., a senior clinical consultant, performed the review.  He detailed Plaintiff's extensive medical history and determined that Plaintiff had a well documented history of cardiac symptoms, but treatment had provided good results and nothing in his file supported restrictions and limitations from a cardiac standpoint.  Further, he found many of Plaintiff's complaints appear to stem from psychiatric fears.  However, the physical problems complained of by Plaintiff had very little documentation and treatment, besides his heart condition.  McCollum concluded that "[h]is treatment has been static and it does not appear that his complaints inhibit his usual duties at home or his other work.  There is no indication that his pain level has risen to a substantial level to cause impairment from his work function based on minimal treatment and static medication."[25]  Further, he believed Plaintiff's psychiatric conditions could be treated concurrently with work.  He deferred to the opinion of separate on-site specialists in the Cardiac, General Medicine, and Psychiatry fields

---

[23]  UA 242.

[24]  UA 934.

[25]  UA 944.

for comment on Plaintiff's physical condition.[26]

Keith Caruso, M.D., Unum's psychiatry specialist, reviewed Plaintiff's file determining that the diagnosis of major depression was supported by the record.  He concluded from a psychiatric standpoint, also consistent with Dr. Corke's and Dr. Marara's evaluation, that there was no evidence that Plaintiff's psychiatric condition resulted in restrictions and limitations which would impair his ability to perform his job.[27]

Alfred Parisi, M.D., Unum's cardiac specialist, performed a similar evaluation of Plaintiff's file.  He concluded the medical evidence did not support limitation due to coronary disease and found a reasonable restriction would be no strenuous exertion or heavy lifting over 50 lbs.  Further, he stated none of the medical evidence indicated that Plaintiff had significant neuropathy.  He noted that the multiple medical conditions apparently suffered by Plaintiff over the years had not affected his ability to work in his regular occupation and in his own business and the two stress tests performed by Plaintiff demonstrated his ability for sustained work capacity.[28]

Woolson Doane, M.D., Unum's internal medicine specialist, reviewed Plaintiff's complete file.  He found long-standing complaints of pain, but no demonstrable loss of neuromuscular function or ability to perform activities of daily living.  Dr. Doane placed particular emphasis on Plaintiff's ability to perform a treadmill stress test both on the date he stopped working and approximately a year thereafter without difficulty or complaint.  He determined the available medical evidence did not support a finding of fibromyalgia because of the lack of consistency

---

[26]  UA 944–45.

[27]  UA 1045.

[28]  UA 1049.

8

between pain complaints and physical examination results.  Further, he found Plaintiff's other conditions, such as obesity and muscle-tension related to anxiety, were just as likely to give rise to Plaintiff's pain complaints and fatigue.[29]

Finally, Unum sent the job descriptions provided by Plaintiff and his employer to the Marston Group for an occupational review.  Alan Ey reviewed the relevant job descriptions and evaluated Plaintiff's occupation as it existed in the general economy, as required under the policy. Ey found the most accurate DOT match was that of Safety Inspector.  He rated the occupation at a light exertional level, requiring occasional lifting up to 20 lbs and/or frequent lifting up to 10 lbs. The occupation may require negligible lifting and because it occurs at construction sites, it may also require some exposure to climbing, unprotected heights, weather, moving machinery and walking on uneven terrain. The occupation also requires dealing with people beyond receiving work instructions and making judgments and decisions.[30]  Based on these reviews Unum upheld its decision on January 21, 2005.[31]

## Discussion

Plaintiff urges the court to heighten the standard of review applied to Unum's decision because the procedural irregularities and the application of an incorrect disability standard under the policy denied Plaintiff a full and fair review as required by ERISA.

### A.      Standard of Review

Plaintiff seeks to recover disability benefits and further alleges Unum breached its fiduciary

---

[29]  UA 1057–58.

[30]  UA 1069–70.

[31]  UA 1074.

duty in evaluating his disability claim.  ERISA provides federal courts with jurisdiction to review benefit determinations.  *See* 29 U.S.C. § 1132(a)(1)(B); *Estate of Bratton v. Nat'l Union Fire Ins.*, 215 F.3d 516, 520–21 (5th Cir. 2000).  Generally, if the language of the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," an administrator's decision to deny benefits is reviewed for abuse of discretion.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113–15 (1989); *Meditrust Fin. Srvcs. v. Sterling Chem.*, 168 F.3d 211, 213 (5th Cir. 1999).  Regardless of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the administrator during the course of a benefits review will be rejected only upon a showing of an abuse of discretion.  *Id.*; *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991) (noting "federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment").

In applying the abuse of discretion standard, the court must determine whether the plan administrator acted arbitrarily or capriciously. *Meditrust*, 168 F.3d at 214. A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.*  When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, the court will uphold an administrator's decision if it is supported by substantial evidence. *Id.* at 215; *see also Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).  "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

Plaintiff argues that the court should heighten the standard of review because of the procedural irregularities in processing Plaintiff's claim.  First, Plaintiff contends that Unum did not abide by its claim procedures and ERISA regulations because it did not reference the specific policy

provisions on which it based its determination.  *See* 29 U.S.C. § 1133(1).  Further, Plaintiff contends Unum failed to describe the additional material necessary to complete the claim. 29 C.F.R. § 2560.503-1(g)(1)(iii) (requiring the administrator to give the claimant "a description of any additional material or information necessary for the claimant to perfect the claim).

The court disagrees that Unum violated its own claim procedures or ERISA based on these alleged irregularities.  In its initial denial letter, Unum cited the policy provisions upon which it relied, discussed the medical records reviewed, and made a determination under the policy that Plaintiff had not shown impairment that would preclude him from performing the material and substantial duties of his occupation. Plaintiff's complaint that Unum did not describe additional material necessary to complete his claim is also without support.  As Unum points out, it required no other information to complete Plaintiff's claim.  To submit a claim, the policy requires a claimant to show: "that you are under the regular care of a physician; the appropriate documentation of your monthly earnings; the date your disability began; the cause of your disability; the extent of your disability; including restrictions and limitations preventing you from performing your regular occupation; and the name and address of any hospital or institution where you received treatment, including all attending physicians."[32]  Plaintiff's proof of claim was complete, and Unum's decision was not based on any lack of information provided by the Plaintiff.

Additionally, Plaintiff argues that Unum failed to disclose the names of each medical or vocational expert used to review Plaintiff's file on appeal. 29 C.F.R. § 2560.503-1(h)(3)(iv) (providing for the identification of medical or vocational experts whose advice was obtained in connection with the benefit determination). Challenges to ERISA procedures are evaluated under

---

[32] D.'s M.S.J. (dkt. #21), Ex. A(1), POL 005.

the substantial compliance standard. *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392–93 (5th Cir. 2006).  In other words, technical noncompliance with ERISA procedures will be excused if the purposes of section 1133 have been fulfilled. *Id.* at 393.  Section 1133 of ERISA states:

> In accordance with regulations of the Secretary, every employee benefit plan shall–
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  Under § 1133(2), "full and fair review" has been interpreted to mean that the claimant should know what evidence the decision-maker relied upon, have an opportunity to address the accuracy and reliability of the evidence, and have the decision-maker consider the evidence presented by both parties prior to reaching and rendering its decision. *Sweatman v. Comm. Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994).

The court finds that Unum did substantially comply with ERISA's procedures and did not deny Plaintiff a full and fair review.  In its final denial letter, Unum fully set out the specific reasons for its determination, the medical evidence relied upon by its specialists, and the findings of its "medical department."  Although Unum did not provide the names of the medical and vocational experts used during the administrative review, a full claims file was sent to Plaintiff's attorney on April 18, 2005 and provided the names and full reports of the experts involved in the review.[33] Plaintiff did not file this lawsuit, the next step in the review process, until May 12, 2006.  The fact that Unum did not provide the names of the medical experts used during the administrative review in the final denial letter did not affect Plaintiff's ability to fully present his claims to this court, and

---

[33]  UA 1099.

thus he has not been denied full and fair review of his claims.

Finally, Plaintiff contends that Unum used a disability standard in reviewing Plaintiff's claim different from that required under the policy. While the disability standard was incorrectly defined in the denial letter (i.e. "because of illness or injury you cannot perform each of the material duties of your occupation"), it is clear from later portions of the letter that Unum applied the correct definition. Unum specifically concluded, initially and on review, that the medical evidence did not support a conclusion that Plaintiff could not "perform the material and substantial duties" of his occupation.[34] Further, as applied, the incorrectly stated definition would require that Unum find that claimant was unable to perform one substantial and material duty of his occupation, effectively lowering the standard in claimant's favor for finding disability. *See Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 345 (5th Cir. 2002) (finding under the definition of disability that the claimant "cannot perform each of the material duties of [her] regular occupation" requires only that the insured must be unable to perform only a single material duty of her occupation).  Although the court does not believe Unum applied an incorrect standard, Unum had substantial evidence to support its determination under either standard, as discussed *infra*.

Plaintiff also urges this court to give less deference to Unum's decision because of the conflict of interest inherent in its role as administrator and insurer.  The Fifth Circuit instructs that when an employer contracts with a third party that both insures and administers the plan, the administrator is considered to be self-interested, i.e. the administrator potentially benefits from every denied claim.  *Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 295 (5th Cir. 1999).  The United States Supreme Court addressed the extent of deference to be given to a self-interested administrator

---

[34] UA 137 (March 25, 2004 denial letter); UA 1076 (January 21, 2005 denial letter).

13

and held "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (citations omitted). Thus, the standard of review remains abuse of discretion; however, when dealing with a self-interested administrator, less deference will be given to the administrator's decision in proportion to the administrator's apparent conflict on a "sliding scale." *Vega*, 188 F.3d at 296. Any reduction in the degree of deference given to an administrator's decision will depend on the evidence presented by an ERISA plaintiff that some conflict exists. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 270 n.18 (5th Cir. 2004). However, where the Plaintiff offers no evidence other than an administrator/insurer's dual role, "it is appropriate to review the administrator's decision with only a modicum less deference than [the court] otherwise would." *Vega*, 188 F.3d at 301. Plaintiff has presented no evidence that Unum made its decision based on any conflict of interest beyond that inherent in its position as insurer and claims administrator.

Therefore, under the policy, Unum acted as the claims administrator and had "discretionary authority to determine [ ] eligibility for benefits and to interpret the terms and provisions of the policy."[35] Because of the discretionary authority granted to Unum, the court will review its decision under an abuse of discretion standard. However, while the court finds no reason to heighten the standard of review for procedural irregularities, the court will review Unum's decision with a "modicum" of less deference due to Unum's role as an administrator and insurer.

### B.     Did Unum Abuse its Discretion?

In order to make a determination whether to grant or deny benefits, an administrator must

---

[35] *Id.* Ex. A(1), POL 010.

make two determinations.  First, he must determine the facts underlying the claim presented and then he must determine whether the facts establish a claim to be honored under the terms of the policy. *Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 343 (5th Cir. 2002).  Unum's decision will be upheld unless it acted arbitrarily or capriciously resulting in an abuse of discretion. *Ellis*, 394 F.3d at 273.

Under the terms of the policy, "disability" is defined as an inability to perform the material and substantial duties of the claimant's regular occupation during the elimination period.[36]  A claimant must continuously be disabled during the elimination period, which under this policy, was 180 days.[37]  "Material and Substantial Duties" are those duties that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified."[38]  "Regular Occupation" references the claimant's "occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."[39]

Plaintiff's position as Senior Safety Specialist was classified at a light exertional level.  A light exertional position requires occasional lifting up to 20 lbs and/or frequent lifting up to 10 lbs., negligible lifting and some exposure to climbing, unprotected heights, weather, moving machinery and walking on uneven terrain given that this job is often performed at construction sites.  The occupation also requires dealing with people beyond receiving work instructions and making

---

[36] POL 014.

[37] POL 003.

[38] POL 037.

[39] POL 039

judgments and decisions.[40]

A review of the administrative record reveals several conditions upon which Plaintiff rests his claim for disability.  On the date Plaintiff submitted his proof of claim for benefits, his attending physician cited his disability as "acute and chronic anxiety."  Plaintiff disagreed that he was having any psychological problems, but on the advice of his physician sought treatment from a psychiatrist. Plaintiff indicated to his psychiatrist that he believed his primary problem was pain stemming from fibromyalgia, coronary artery disease and neuropathy.  In an abundance of caution, Unum reviewed all of his medical records related to each condition to determine if singularly or in combination any of these conditions made Plaintiff disabled under the terms of the policy.  In addition to Plaintiff's four treating physicians, Unum had a total of four doctors and two nurses, in various specialties, review Plaintiff's file.  Based on these numerous reviews, as well as the vocational and functional capacity analyses, substantial evidence existed in the record to support Unum's finding that Plaintiff was not disabled under the terms of the policy.

### 1.    Physical Condition

Several reasoned opinions from Unum's medical department, as well as reports from Plaintiff's treating physicians provide substantial support for Unum's determination related to Plaintiff's physical maladies.  For instance, Plaintiff's treating physician, Dr. Incalcaterra stated that he believed that Plaintiff's primary problem was psychological and concluded, from a physical standpoint, that Plaintiff's condition did not preclude full-time work capacity. Further, around the date of Plaintiff's claimed date of disability in August 2003, Dr. Garcia-Gregory performed a treadmill stress test to evaluate Plaintiff's cardiac capacity.  He was able to achieve 7 METS

---

[40]  UA 1069–70.

(equivalent to heavy work capacity) and the results were considered normal with no detectable cardiac symptoms. A similar test was performed a year later with no change. Plaintiff's own cardiologist agreed that he was not limited by his cardiac condition and his symptoms were being successfully treated with medication. The results of these stress tests also led Dr. Doane to conclude that Plaintiff did not have the significant pain and limitations that he complained of because "there was no report of neuromuscular or joint compromise during this test or difficulty in following instructions."[41] While Dr. Salvato diagnosed Plaintiff with fibromyalgia and neuropathy in the feet, his evaluation was based on one visit seven months after Plaintiff's date of disability and his findings did not indicate the severity of the condition or the affect it would have on Plaintiff's ability to work. Besides Dr. Salvato's findings, no other doctor evaluating Plaintiff's physical conditions or records thereof found any incapacity to perform light exertional work based on pain or any other physical condition. *See Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 249–50 (5th Cir. 2007) (finding the administrator is vested with discretion to choose between competing medical views).

Plaintiff argues that Unum relied too heavily on Plaintiff's at-home business to support finding that Plaintiff had work capacity without equally considering Plaintiff's statements that he played a very limited role in his own business. The court finds that Plaintiff's at-home business was not a substantial factor in Unum's decision, but was only mentioned to contradict Plaintiff's claim that he was unable to function or get out of bed. Further, there is sufficient evidence by way of numerous doctor's opinions to support Unum's determination regardless of Unum's consideration of this issue.

---

[41] UA 244.

## 2.      Psychological

First, Plaintiff cannot meet the policy requirements for claiming disability based on mental illness because he was not under the regular care of physician for this condition on his date of disability.  Plaintiff first sought treatment from Dr. Corke in December 2003, four months after his date of disability.  Despite his seeking treatment in an untimely fashion under policy requirements, substantial evidence in his medical records additionally supports Unum's decision to deny benefits based on mental illness.  Dr. Corke diagnosed Plaintiff with Major Depressive Disorder, but found he was not "symptomatic enough" to be disabled.  Her understanding that Plaintiff worked at his own business also corroborated her finding that he was able to function and work.  Dr. Corke believed Plaintiff's primary problem was physical, not psychological.  A thorough review of all of Dr. Corke's records also indicates that Plaintiff's depression was being properly managed with medication.  Further, in March 2004, in a telephone conversation with Dr. Kile, Dr. Corke reiterated that Plaintiff's depression and psychological disturbances did not prevent him from working.

Plaintiff argues Unum abused its discretion because it did not consider the non-physical aspects of his job when making its determination.[42]  However, Dr. Corke made her diagnosis and finding that Plaintiff was not disabled based on the symptoms he presented, namely his inability to make decisions, his inability to focus, fatigue, etc.  Dr. Corke took Plaintiff's mental capacity into

---

[42]  Plaintiff makes a related argument that Unum's physicians did not consider the duties of Plaintiff's position when making their reports.  However, a similar argument was rejected in *Sweatman v. Comm. Union Ins. Co.*, 39 F.3d 594, 603 (5th Cir. 1994).  The Fifth Circuit found that Unum had the ultimate responsibility of determining whether the claimant was disabled.  Thus, the individual physicians asked to comment on the whether the records supported the claimant's limitations were not required to be familiar with the specific job duties of the claimant's occupation.  In the present case, however, the reviewing physicians were aware that Plaintiff held the position of Senior Safety Specialist.

account when diagnosing him with Major Depressive Disorder and finding a GAF score of 60.[43]

Further, the Functional Capacities Evaluation conducted specifically addressed Plaintiff's ability to function in activities of daily living and at the work place "based on [the] evaluation of [his] psychiatric status."[44]   Although the therapist noted that "safety supervision on site may be too stressful," the overall results of the test showed Plaintiff to be only mildly impaired in  five of the sixteen categories.  The mild impairment category is specifically defined as "suspected impairment of slight importance which does *not* affect functional ability"(emphasis added).  Finally, in response to Unum's Referral questions, Dr. Caruso stated that from a psychiatric perspective, Plaintiff has sustained work capacity.[45]   Thus, it is clear that the reviewing physicians took the non-physical aspects of Plaintiff's occupation into account when evaluating his medical records.

In conclusion, the opinions of several consulting physicians, as well as Plaintiff's treating physicians have found that Plaintiff is not disabled or unable to perform the material and substantial duties of his job based on physical or mental conditions, or a combination thereof.  Therefore, finding that Unum did not abuse its discretion, the court will uphold its decision to deny benefits.

### C.    Breach of Fiduciary Duty

Plaintiff also maintains that Unum breached its fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3).  However, a breach of fiduciary duty remedy is only available when no benefit claim

---

[43]   The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* (4th ed. 2000) at 32. The GAF scale only takes into account psychological, social, and occupational functioning and does not include physical impairments. *Id.* A GAF of 51 to 60 suggests moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34.

[44]   UA 83.

[45]   UA 1045.

exists under 29 U.S.C. § 1132(a)(1). *See Varity Corp. v. Howe*, 516 U.S. 489, 510–16 (finding an

ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy

is available under 29 U.S.C. § 1132); *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634,

639 (5th Cir. 1999).  Finding that Plaintiff cannot maintain both claims, the court will grant Unum

motion for summary judgment on this count as well.

**Conclusion**

Although Plaintiff advances a variety of arguments in support of his claim, none creates a

material fact issue establishing that Unum abused its discretion.  Based on the findings of numerous

specialists and Plaintiff's treating physicians, the court finds that substantial evidence supported

Unum's decision to deny Plaintiff's claim for benefits. Therefore, Unum did not abuse its discretion

when it found that Plaintiff was able to perform the material and substantial duties of his occupation.

Finding no genuine issue of material fact, the court GRANTS Defendant's Motion for Summary

Judgment (dkt. #21) and DENIES Plaintiff's Cross-Motion for Summary Judgment (dkt. #25).

Further, the parties unopposed request for oral hearing (dkt. #30) is DENIED as moot.

It is so ORDERED.

Signed this 26th day of September, 2007.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE